You may be seated. Clerk will call the next case. 313-0801, Ironhustler Excavating, Inc. v. Illinois Pollution Control Board is due to proceed at 1 a.m. Mr. Rimmel. Good afternoon, Your Honors Counsel. May it please the Court. I understand that you've read the briefs and I want to focus on a couple of items that are more or less tangential and explanatory to them. This is not a pollution case, notwithstanding that it is a petition for review from the Illinois Pollution Control Board. It is a case about the procedures that were followed at the Board, which were unlike anything I'd previously experienced anywhere, and resulted in the Board refusing to consider the 222-page response to the PIMPLs, the EPA's motion for summary judgment, and granting the motion. Wait a minute, when was that? They didn't have that when they granted the motion. No, they ultimately refused to consider it. They didn't have it at the time they decided the motion, no they did not. The case starts factually in January of the year 2008 when Respondent Iron Hustler delivers to Ron Bright's quarry material that had been excavated from the activity packaging site in Pekin, delivers material to be used by Bright as a road base, which he did, and pick up fine clay and sand material that could be used for backfill, the material having been removed because it was insufficient to support a heavy foundation for a new water treatment plant at the facility. The EPA learns of this, goes out, documents what they perceive to be a delivery of a, quote, waste, unquote, material to the quarry, and after they do that, three and a half years later, they file a complaint before the Illinois Pollution Control Board that does not allege any kind of emission of any type of air, water, it does not allege contamination of groundwater, it does not allege contamination of surface water, it alleges that a material that was supposed to stay where it was, was placed in the quarry to be used as a road base or whatever, and that that shouldn't happen. So I just wanted to make that clear. Now, what that's all about factually and where that leads is not the subject of this appeal, it was the subject of the state's motion for summary judgment, and covered rather fully in the document that I attempted to get before the board, which they have refused to accept, and that's not why we're here. We're here because the board went ahead and decided to grant the state's motion for summary judgment under very extraordinary circumstances that have been doing these matters before that board since it was created in 1970. It's unprecedented. I've never seen anything like this. Well, has it been your experience that these timelines in the statute are just advisory? There's not a timeline in the statute. There's no deadline for decision on these matters. How about a deadline for time to file a response to a motion for summary judgment? Those deadlines are in the regulations. That's not the question here either. What the question really is, is when someone says I need an extension of time, and should they or should they not get it, and what did I get in this situation? But before going into that, let me point out that the state's motion for summary judgment, having been filed in August of the year 12, was followed, and you need to look at the pollution control board clerk's certification of record, which is quite thorough, and is found in the appendix to my brief commencing on page one of the appendix. And this certification reflects that there were a lot of attorneys involved in this case at one time, and in these early stages, and when the state's motion for summary judgment was filed in August 10 of the year 12, there were, Eltimity was still in the case, IPM was not participating anymore, but was at that time actively represented by Douglas DeSoto and H. Scott Rock, and I was involved, the Attorney General was involved, and we had lawyers representing everybody. And the state was in the process of answering discovery when the first deadline for response to the motion for summary judgment would have come due. And by the way, it's 14 days before the pollution control board, which is a rather tight time frame anyway, you don't see that in the circuit court, but that's not a problem in itself. Nobody could get their work done in time, and the state cooperated in extending the deadline, I think a grand total of four times, as reflected by the third stocket sheet, until finally, and the reason for these changes was because the other parties wanted to participate in depositions that I was suggesting of state witnesses. And getting that coordinated was taking some time, and the state hadn't fully answered all of their discovery yet, and they wanted that before they deposed these witnesses. So there were multiple extensions that the state participated in and agreed to, and they never became the subject of motions for extensions because they were just agreed to. So the hearing officer would be told of this, and she would then adjust the dates in her hearing officer orders, which she was entering on a regular basis. But finally, on my own, I filed, on behalf of my two clients, I filed a motion for extension. The first time I do that is February 26th of 2013, that's granted. On March 29th, I filed my second one. The hearing officer, I think because she was confused about the earlier changes in the schedule, inadvertently referred to my second motion as a third motion in her order, which is in my appendix for ease at page 37, where she says that she's not going to be able to grant a third motion, really the second, because the people have objected. And the policy is that if they object, then we don't get any more extensions. That's not what the rule says. The rule says that the extension may be granted on good cause shown. In that case, I was sick as a duck. Had been, and ran that way for a number of months. But, and she knew that, and Ray Callery, the assistant attorney general knew that, and we were all talking about it on the phone. And these are all done by phone conferences that are not transcribed. And Ray says, my client wants me to object. And so I have to object. And she says, well, if they object, then I have to deny it. That's what she said. Now, there's no hard rule. Well, did she say that or don't normally grant these? No. She said that she's constrained. That's what she said or what she wrote. And I have to call your attention, this language is what it is. A third request is denied, and respondent should file responsible. This is interesting. When you deny somebody's extension, then you say the respondent should file a response along with a motion for a leave to file and scatter as soon as possible. When the response is filed, the deadline for the people's reply will be reset, and then she sets the date for the next phone conference. That's what she said. Now, that told me that, yeah, the third, this is about the third request, that's not right, but never mind. And, yeah, she's denied my extension, but never mind. And she just told me, get it on file as soon as possible with a standard motion. I've been told that by judges and never had them pull the plug on me. Did you take that to mean whenever you got around to it? Okay, Judge, no, I didn't take it to mean. When did you ultimately file your response? I filed the actual document on the 26th day of August 13th. That was the day it was electronically filed at the Pollution Control Board. This was after they'd already denied the motion for summary, they granted the motion for summary judgment. And this was within the 35-day time to either file a motion to reconsider or amend, and I did both. I'd asked for reconsideration and amendment in my verified pleading because it had become obvious at this point that there was a massive miscommunication that must have occurred between the hearing officer and the board. Here, on the 8th of July, just 17 days before the board enters this dispositive order, out of total surprise, that very day the hearing officer had had a phone conference with Mr. Callery and I and entered her order, which appears on page 38 of the appendix to my brief, where she notes that I'm expecting to be filing my response to the motion for summary judgment within 30 days of the 8th, which is true. I had substantially gotten out of the medical problem that I had been facing and I was back working again, and then she goes on to say that a new date will then be set for the state to reply and that the parties are to participate in a phone conference on October 7th, upcoming in that year. That's not the words of someone who's anticipating that she's lost the file. That's not someone who's even got a glimmer that the Pollution Control Board, her boss, is going to enter an order granting the motion, the very motion that she's dealing with. It's just amazing that it occurred and my verified petition or motion for reconsideration and modification of the order recites what she told both Mr. Callery and I when we called her after this surprise order had been entered, and she said she had no idea that it was in the works and that she would have alerted us if she had known that. He and I were both completely taken by surprise. Of course, he was pleasantly surprised. Let me ask you this. I don't know the answer to this. Because, you know, in the circuit court, you file a motion for summary judgment, somebody's doing something, and usually you call, the court doesn't use sua sponte act on it, you call it up for hearing. In front of the EPA, do they usually just, after the motion and response are filed, do they just deal with it? The board does not have live hearings on motions. They don't have live hearings on much of anything except enforcement cases, and even then the board doesn't usually have anything to do with those. They might have a board member go, but they do it all through hearing officers. Most everything they do is through hearing officers. Hearing officer gets a file, works it up, and lets the board know that it's ready. And lets the clerk know it's ready. That didn't happen here. That's what happens in all the other ones. They hear an enforcement case, they swear the witnesses and everything else, go through the hearings, get the transcript ordered up, wrap it all up, tend to it to the board. And they do it usually with a formal order or docket entry saying my work is complete, here you go. Didn't happen here. It just didn't happen. Nothing happened according to Hoyle in this case. The procedural rules of the board were reinvented and provisions were added to the rule inadvertently by the hearing officer. There's nothing to be found in the Commission Control Board's motion practice rule which suggests that one party has a veto power over the outcome of a motion or whether it will be granted or denied for extension of time. It's supposed to be purely the hearing officer's province. And in this instance, the hearing officer says I can't because the Attorney General has objected. Nothing in the rules about that. They didn't follow their rules, they followed some new one that I frankly hadn't heard of until that very time. I'm not new to this area or this tribunal. They never transcribe anything that happens before the hearing officer in these phone conferences. They're done by telephone. The complainant's in the case and she needs to call. Parties everybody in. That's the way they're done. The hearing officer does not pass an order like a judge in a courtroom might. Counsel, you all okay with this order? You know, sincere, signing approval, whatever. Doesn't happen. The hearing officer sends out an order. You get it some days later and recites to the best of her ability in this case. What happened? She clearly, clearly knew my situation. Ray Calhoun, who's actually a friend of mine, certainly knew it. We discussed it at some length. I had been literally disabled for periods of time and by condition. And it has passed, thank God. And I'm back at it. But I was out of the box for a while. The idea that somehow the state got it, deprived us of time over being deprived of speed. They waited three and a half years after we found this material to even file it. From the date that I was told to get my thing on file as quickly as possible and within the standard motion, from the date I was told that until the date that the board shot my case right out of the water, about four months had passed. Thank you very much. Well, let me ask you this. When she denied your motion to, the hearing officer denied your motion, how much time do you think you had? I figured I had as much time as I needed to get it done given my health condition at the time that she was fully briefed on. And I worked at it and picked at it. But being unable to read a computer screen for more than a few minutes at a time without becoming nauseated was an impediment to work. And I do my own typing. The whole thing was a disaster. And everybody was informed. And no trial judge would have done this to an attorney. I'm really disappointed that this occurred. I'm disappointed to be here under these circumstances. I'm disappointed I've never seen the like of it. Thank you. May it please the Court. My name is Frank Bizet, and I represent the respondents, the Illinois Policing Control Board, and the people of the State of Illinois. The board's order granting summary judgment should be affirmed because the board did not violate any procedural rules when it granted summary judgment nearly four months after the deadline for filing a response to that motion had expired. Now, although petitioners are raising the procedural challenge in this appeal, the procedural history of this case, while a bit lengthy, is actually fairly straightforward. On August 10, 2012, the people filed a motion for summary judgment. The hearing officer then stayed and extended the 14-day deadline for filing a response a number of times. Specifically, the deadline was stayed until January 31, 2013, so that petitioners could conduct discovery and engage in discovery. And then the hearing officer subsequently granted an extension of that deadline to February 28, and then granted petitioners' request for an additional extension of that deadline until March 28. On March 27, more than seven months after the motion for summary judgment had been filed, petitioners sought an additional extension of time, this time to April 29, and the hearing officer denied that request. Now, in the hearing officer's order, she clearly states the third request for extension of time is denied. The hearing officer then advised petitioners that they should file a response along with a motion to file an extension as soon as possible. And then on July 8, which was the next regularly scheduled status conference, the hearing officer entered an order after that conference, memorializing what had occurred at that conference, and reporting that the petitioners had The petitioner, however, did not request an extension of the previously expired deadline. The hearing officer did not set any new deadline. And petitioners did not file a request with the board to file a response to the motion for summary judgment in standard. It's filed in standards as soon as possible. In standards, traditionally, I mean, it's in court that day, or it's right then and there. Right. Which, so right then and there, how do you add as soon as possible to that and not get something that's more open-ended? Well, it would be a very open-ended deadline if that was in fact a new deadline. The hearing officer advised petitioners that they should file this response as soon as possible. She was not setting any sort of new deadline. In fact, she had just in the order itself, in that same sentence, she said, the extension of time, the third request for extension of time is denied, and respondents should file the response along with the motion for leave to file in standards as soon as possible. So she informed the parties that the extension of time had been denied, but likely because the hearing officer understood that once that deadline had expired, the board could rule on the motion for summary judgment at any time, that petitioners file a response as soon as possible, and along with the motion for leave to file in standards, because petitioners would have to get leave from the board to file this response after the deadline had already passed. Now, on appeal, petitioners argue. What are mixed signals? I don't think so, Your Honor, because she specifically says the request for an extension of time is denied. So the time was up on what day? The time was up on March 28th. And what's the date of the order? March 27th. Okay, so the next day is coming. Yes. I'm not thinking about filing. But she said the extension is denied. But then she said, but file it as soon as possible. Right. It doesn't say tomorrow. No, but I mean, she was essentially just advising the petitioners that, you know, it really is in your best interest to do this as quickly as possible because, as a factual matter, the board, once that deadline had passed, the board could have ruled that it's the next meeting or the meeting thereafter, and, therefore, she was sort of giving petitioners a guideline of how to best avoid having what happened here occur, which is where the summary judgment occurred. Well, the guideline was simply you should file as soon as possible with the motion for leave to instancer. But that is in the same order in which the hearing officer said that the request for extension of time is denied. And, in fact, it would be somewhat strange for the hearing officer to deny a one-month extension of time and then, in the very same order, in the same sentence, in fact, then essentially grant an unlimited extension of time, whereby the party could file the response at whatever point in time is considered as soon as possible. Well, the hearing officer was hearing the motion. Yes, correct. The motion as soon as possible. Who hears that? The hearing officer. No. Once the deadline had passed, petitioners would have had to then file, seek leave to file the response instancer with the board. Because at that point, once the deadline had expired, the matter, there really wasn't much more for the hearing officer to do unless, until the board ruled on the motion for summary judgment. Everybody understood that when the hearing officer said do it as soon as possible and file a motion. That wasn't going to be before. Well, I believe it was clear that it wasn't sort of an extension of the deadline because, in that very same order, in that very same sentence, she had just denied a request for a one-month extension of the deadline.  She could have just granted the motion for a one-month extension of the deadline. Was there any more discovery after March 28th? No. I don't believe so. Not that I'm aware of. The only things that happened after March 28th were the July 8th status conference, and then on July 25th, nearly four months after the hearing officer had denied the request for a one-month extension, the board entered summary judgment. On July 8th, it appears as if notes indicate that she, you know, that they are expecting to file a response for summary judgment, and sets a, and says that she's going to set a deadline to be set for the people to hear. It also seems to indicate that this deadline somehow has been extended, or it's been very confusing that if she had denied the motion to request additional time, that then on the next status hearing, that then she would have indicated that, you know, there's going to be this motion, and then she's going to set a time for the people to reply, and set another status conference. So is it that you can, if you get one in and you slip it in, then it can be considered? I mean, you know, under this, in the appendix, it indicates that there's going to be an allowance for this response to be filed. In the July 8th order? Yes. Well, I believe in the July 8th order, all the hearing officer was doing was recording what had occurred at the conference. And all that happened at the conference is that the respondents, or petitioners, excuse me, reported that they planned to file a response within 30 days. The hearing officer in this order never says that she's taking any sort of deadline. She never says she's extending the deadline or setting a new deadline. She's merely stating that if, that petitioners have represented that they plan on filing within the next 30 days. And then the import of the final sentence of, you know, after the response is filed, the deadline will be set for the reply. That's, she's just saying, assuming that the board allows petitioners to file this response in Stanter, she would then file, she would then set a deadline for the people's reply. And that sort of explains why there was a status conference on July 8th and why there was another one on October 7th. Because the hearing officer still needs to set these sort of status conferences just in case something, there's a need to schedule something new. For example, the board could have ruled against the people's motion for summary judgment and denied the motion for summary judgment. Or, for example, petitioners could have filed a response and had, before the summary judgment order had been granted. And then at that point, it would have been incumbent upon the hearing officer, under her responsibility of deciding non-dispositive matters and setting scheduling, to then set a deadline for the people's reply and then for any other proceedings that happened thereafter. Because although there is perhaps some confusion and petitioners at some points talk about the board sort of taking this case away from the hearing officer, but that's not really an accurate representation of how the board's procedures work. The motion for summary judgment was always before the board, because the board was the only entity that had the authority to rule on the motion for summary judgment, because that was a dispute. They act through a hearing officer. They act through a hearing officer on some matters such as scheduling like this. So even though the motion for summary judgment is before the board, the hearing officer takes care of these sort of administrative matters of setting deadlines and things of that nature. So based on the question you just asked, the hearing officer is saying, well, when you file a response, how does the state respond to that? Well, if petitioners had filed a response to the summary judgment motion, then the state would have had an opportunity to file a reply. So she was just contemplating a possible future scenario. So in the future hearing, they're discussing things about what's going to happen in the future around the summary judgment. Well, nobody knows about it at that time. Well, I mean, right. At that time, there's no guarantee when the summary judgment motion is going to be answered, but it was on the board's agenda at every meeting, at their bimonthly meetings, and it's just sort of. So I guess I don't mean to interrupt. Okay. The hearing officer can set the deadlines and they can grant extensions, but when she says, no, I'm not going to need to file an instanter as soon as possible, does that foreclose then them from filing a response until a motion for leave to file an instanter has been granted? Yes. And then who grants that? The board. Once the hearing officer denied the final request for an extension of time, any relief that petitioners could have wanted to seek from that decision would have had to be with the board, either by seeking leave to file a response to the motion for summary judgment or by filing an interlocutory appeal with the board, challenging the hearing officer's decision to deny the extension of time. But under your theory, then, what possible jurisdiction does this hearing officer have by making these other statements about when the state will respond after the filing? Without some kind of action from your standpoint from the board that an extension has been granted or, you know, the other rulings overturned, there's no way that she's saying that. Right. It wouldn't happen until the response was filed. So what is she doing saying those things? I think she's just setting out, you know, what the procedure will be on the assumption that petitioners would file a response before summary judgment. It was like a pretend thing. If you, you know, unsaid was if you go and file this with the board and the board grants it, then you're going to have to file a response. I mean, why are you saying all these things if it doesn't matter, if it hasn't come to pass, if there hasn't been a motion? Well, I think just to give the parties an idea of what the procedure will be like. Well, actually, they gave a false idea of what the procedure was going to look like. Well, yeah. Does the hearing, when the time we're at expires to file a response to the motion for summary judgment, is it your position that the hearing officer needs jurisdiction? The hearing officer at that point would not have jurisdiction to accept a response to the motion. The hearing officer would not have the authority to grant leave to file a response at that point. That would be up to the board. The hearing officer, once she denied the extension of time, really didn't have much more to do in this case except to set these regular status conferences because it was still an open and pending case, and it was important to have one of these dates available in case the summary judgment motion was denied or if petitioners had followed their response for summary judgment. And so then at that point, there really wasn't much more for the hearing officer to do. And if petitioners wanted relief from that decision, they needed to either file an interlocutory appeal with the board from the hearing officer's decision or request leave to file a response to the motion for summary judgment from the board. But from what you're saying, the hearing officer had no authority to talk about filing a response or anything like that. Well, she was just, she didn't have authority to answer an order. She was being nice. She didn't have authority to answer an order or change the schedule, but she felt that it would be helpful to. So what is the point of continued status conferences with somebody who doesn't have authority to do anything? Well, the point of continued status conferences is, for example, between the March 27th order and the July 8th status conference, the board could have people's motion for summary judgment. And at that point, the hearing officer would need to schedule a date for the reply. But they didn't. Right. And so up until, as I understand it, the ball is now in the board's court. Correct. Because the summary judgment filed, time to respond to it expired. Okay, it's now in their court. And now in the event that the board denies a motion for summary judgment, then I'm, as I understand it, it would come back to the hearing officer to do whatever. But I'm saying in that interim, between the time that time has expired for the hearing officer to enter any orders on this thing, what is the point of a status conference with that hearing officer? Well, there really wasn't much to do at that status conference. They did things at two conferences afterwards. After that one date, when she said extension denied, file it as soon as possible with the motion. There was then a status conference on July 8th. Well, there was one, and then at that one, she scheduled the next one, which didn't occur because the motion for summary judgment had been granted in the interim. And there is no argument for the motion for summary judgment when they actually hear it. The PCB doesn't conduct any kind of a hearing or anything. They just take the documents as submitted by the parties and render a decision. Right. And they do, in the summary judgment, they do go through all the substantive issues. They don't just say, well, petitioners didn't file a response, therefore, we're going to rule in favor of the state. Did the board know what the hearing officer was doing? I mean, you're suggesting the hearing officer was sort of running amok. Well, the board was aware that the deadline had expired. And so then at that point, it was right for adjudication by the board. Were they aware the person was saying these other things? I don't believe so. I don't. So it is not a case where when all the documents are ready, when the hearing officer is going to file a response, the board is going to say, well, we're going to rule in favor of the PCB. We have all the documents. It's ready to be ruled upon. That isn't the case? Well, I mean, essentially, once the deadline had passed, that is kind of what happened here. There wasn't anything more to be filed unless the petitioners came in and were granted leave to file a response in stancer. At that point, it was before the board. The deadline had passed. Petitioners had had an opportunity to challenge the hearing officer's authority by filing an interlocutory appeal with the board. They did not do so. It doesn't sound like the hearing officer ever said anything to the board saying it's not right for decision. Well, I don't know for certain what the communication was between the hearing officer and the board, but the board was aware that the deadline had passed because the board referenced it in their summary judgment order, noting that the deadline had passed with no response, and therefore the absence of a response constituted a waiver of any objections to the summary judgment motion. And then the board went on to address the substantive matters and issues in the case and determined that summary judgment was appropriate in this case. So the board was aware that the deadline had passed. Okay. Unless the honors have any other questions? No. Thank you. Mr. Immel. I would like to counsel's answers to some of your questions have given you some of what I think is some pretty bad information. First of all, I want to go back and revisit the procedural rule that governs motions directed to the hearing officer. This is page four of my brief. I've quoted it in full. The hearing officer has authority to rule on all motions that are not dispositive of the proceeding, period. Then it goes on to say things, those things that she can't rule on. Motion to dismiss, motion for summary judgment, et cetera, et cetera. Okay. The motion for leave to file in standard, of course, by its nature, has to accompany the document that you are seeking to file in standard. Otherwise, all you've got is a motion accompanied by nothing. What if you just tried to file in standard? So needless to say, the motion accompanied my response when I sent it to the board electronically. It was a motion that the hearing officer could act upon and would have. So after the time of the filing, who acts on that motion to file in standard? The hearing officer or does that have to go to the board? It could be either one, but in this case, the hearing officer had never closed her record and tendered the matter to the board, so she would have been the one I would have addressed it to. And, in fact, I've done that before. The council's idea about the role of the hearing officer, I think, is not exactly accurate. The hearing officer never closed her record, and she never tendered anything to the board for a decision. She still had the case when the board, to her surprise, decided the matter on July 25th. The PCB was not, the jurisdiction hadn't evaporated at the hearing officer level. Procedurally? Procedurally, yes. Procedurally, how is a tender, is that in the rules, the tendering? No, no, that's internal office procedure. They just let the board know, and they have had different ways of doing it over the years, sometimes by letter. I recall that they would have hearing officers all over the state of Illinois for a board that's seated in Chicago. A lot of them were private lawyers hired contractually, and they would send a letter in from Galva or from Murfreesboro saying, I've finished my work here, and this was even before faxes. And then the faxes came along, and that replaced it, and that's how they would communicate. They would make a communication of some kind of a writing, just, you know, I'm finished now. I'm tendering the file to the board, and the board clerk has everything. Is that by a rule regulation? No, that's not by rule regulation. That's just by internal functioning of the hearing officer, how they communicate with the board. Custom. Custom in practice, and it's varied over the years with the change in communication technology. Now they can do it with voicemails and email. It's also very informal. Right, but the board never acts until the hearing officer says they're done. That's the part of this that has struck me as being so bizarre. And that statement, is there a rule regulation like that? No. Well, I'd like to go back for just a second to the denial of the motion for extension of penalty. Is, as I understand, as you said, if you give an extension of penalty, there's a clause shown. Yes. Okay, and is there a record of when you get clauses in here? The record is what actually the record, there's a verified document signed by me that was filed before the Pollution Control Board explaining what had gone on. I want to know what the hearing officer knew on March 27th when she denied your motion. What the hearing officer knew on that date that I was extremely ill and that the situation with my illness had thrown my practice totally into chaos, not just this case, but that I was working furiously as best I could under the circumstances. And she was totally sympathetical with the problem and knew about it, but the state had objected to the second, and it was not the third, counsel misspoke. If you go back and look at those, you won't find any motion from me until, this is the second one anyway, when she said, well, because the state's objecting, I have to deny it. Well, I guess... And so, then she came up with this... How do I know, regardless of the state's objection, how do I decide whether she abused her discretion in denying the motion unless I know the basis of the motion? I don't think she abused anything because what she did was she made a sense that she gave life to a non-rule by saying that I'm obliged to dismiss or deny your motion because the state's objected. There's no rule that permits that to happen, and in that case, I suppose she might have been... But I wasn't going to accuse her of abusing her discretion because she bailed me out in the next sentence, okay, to be blunt. Was she obligated to give me the motion? Let's put it this way. I don't know of a jurist on earth who wouldn't have given it to me, and I would hope that she would behave the same way. I was a sick person, and it was known by everybody. Springfield's a small town. We all know each other. And I was a very ill person at that time, and I had had a problem which was being worked on, and it was unresolved, and it had delayed my ability to get this work done. And it's a lot of work if you look at what I filed, and it's before you in the record. My time is up. Well, let me ask you, you know, when you talk about your... I mean, at some point, you know, I used to be a real lawyer, and at some time when you can't fulfill your duties, are you obligated to bring somebody else on board to get somebody in there to... Well, I'm of counsel in a small firm. I have no help, and I'm the only person who's ever represented these particular people, and I was in it from the get-go and had helped them on other matters of business nature. And I was their guy, and I got sick, and we're talking a four-month window that suddenly turns into, oh, my God, that's the worst thing that ever happened. When the state waited three and a half years to even file the case, and there was no injunctive relief ever sought, or there was no emergency. It was an argument over what is that pile of stuff?  That was the argument. And, you know, that's all in the summary judgment side of things, and I have fully briefed that and all, and it's before the board, and they didn't want to look at it. And you don't have to look at it either, because we're not here de novo, because they never decided fully the summary judgment motion, because they never looked at my stuff, and so they left out the other side. And that's an incomplete decision, to my way of thinking, but they didn't want to hear about it. Okay. We've got rid of the case. Thank you very much for your patience and your time today. Thank you, Mr. Emerald. Thank you, Mr. Beeson. Bees-cat? Bees-cat? Bees-at. Bees-at. Bees-at. Thank you. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued as quickly as possible. Right now, we'll stand in a brief recess for a panel change. All right. Thank you for your recess.